Judge Rosenbaum and I would like to announce that Judge Lisa Branch is sitting with this court as a court of appeals judge for the very first time and we're delighted to have her here and why don't we give her a hand. And with that we'll begin with the United States v. Chin with Mr. O'Brien. My name is Mark O'Brien, I represent the appellant Leslie Chin. Your Honors, I would like to start if I could with issue number two, which is the issue of the request by the appellant for a new trial based on newly discovered evidence. As this court is aware, there were three, excuse me, two co-conspirators that testified against Mr. Chin at trial in addition to what is colloquially known as a jailhouse snitch. The two co-conspirators both testified as to the distribution of cocaine. After trial, prior to sentencing, I was notified that Antonio Hill, the co-conspirator who testified against Mr. Chin, wrote a letter to his attorney prior to the start of our trial, two letters actually, which exculpated Mr. Chin from any cocaine dealings. He denied knowing Mr. Chin, he denied knowing the person known as Bless, he denied ever having any illegal dealings with Mr. Chin, including that of cocaine distribution. Based on that, we filed a motion for a new trial based on newly discovered evidence. The four prongs that we had to establish were number one, the evidence was discovered after trial, that is not disputed by either side. The failure of the defendant to discover the evidence was not due to a lack of due diligence. I don't believe that is disputed by either side. Number three, the evidence is not merely cumulative or impeaching. Number four, the evidence is material to the issues before the court. It is certainly material. And number five, the evidence is such that a new trial would probably produce a different result. It appears that three, prong three and prong five, are the issues that I think I should discuss. Judge, Your Honors, in terms of prong three, it is not merely cumulative or impeaching. It is our position that Mr. Hill exculpates Mr. Chin. Had I had these letters beforehand, I would have called him as a witness myself. He would have directly contradicted the testimony of Mr. Coleman, who was part of this conspiracy. The fact that it may have impeached, in addition, goes to the merely as part of this prong. But first and foremost, I believe that it would have exculpated Mr. Chin entirely. I don't believe the government would have called Mr. Hill had they been aware of these also. The fifth prong is the remaining issue, I believe, and that is the evidence is such that a new trial would probably have produced a different result. It is important to note at this point that Mr. Chin was charged with two counts. The second count is possession of cocaine, which essentially we conceded during opening statement and during closing argument. The first count contained the possession with intent to distribute cocaine, crack cocaine, and marijuana. As your honors know, the jury found Mr. Chin not guilty as to the crack cocaine and marijuana portions of that count. This is significant because both Mr. Coleman and Mr. Hill only testified as to cocaine. Therefore, it appears that the jury placed greater emphasis on the cumulative testimony of both Mr. Hill and Mr. Coleman. If faced with one of the two co-conspirator witnesses who testified against Mr. Chin, essentially saying that Mr. Chin was innocent, had nothing to do with this, I think there would have been a different result. In addition, your honor, we raised two other issues. Those issues have to do with the reasonableness of the sentence of 188 months, which was the bottom of the guidelines, and we presented evidence and mitigation that warrants a lower sentence and the issue of whether or not the motion for a judgment of acquittal should have been granted. It is our position that there was explanatory evidence in the contrary to what the government offered as proof, and both of those motions should have been granted. The court have any questions for me, I'd be glad to answer them as to any issue. Again, I started with issue two because I believe that that is probably most relevant to the court as this court ordered this oral argument. I think we understand that you've saved a rebuttal time. Thank you. Mr. Waterman. Thank you, your honor. May it please the court. My name is David Waterman on behalf of the United States. Since Appellant's counsel focused on the second issue, I will as well. The district court rightly held below in denying Chin's new trial motion that there was substantial and overwhelming evidence that existed. So as to the fifth prong, Chin cannot establish that if there was a new trial and he had Hill's two letters that the result of that trial would probably produce a different result. That's because Hill's testimony was particularly insignificant in the scheme of all the evidence that came in at trial.  There was no significant involvement in the conspiracy. Harold Coleman testified that Chin had just delivered and distributed about 20 kilograms of cocaine, both in Atlanta and Sumter. And Gary Williams testified that Chin had told him while in jail in Charlotte County that he had brought drugs to Sumter, South Carolina in cars with hidden compartments. You know, from the briefs, it's a little difficult figuring out when these people were in and out of jail. Yes, your honor. They were. Yep. Coleman was in jail and all of a sudden he's out of jail. Correct. And same with other members of the conspiracy who were in and out of jail as well. And the testimony. And for what? I mean, that's another. Yes. The first mention of Coleman, he's in custody and I couldn't figure out for what. Well, previously, Coleman was. I didn't read the transcript, so that's why I'm asking the question that I didn't get it out of the briefs. Yes. So Coleman was involved and was previously involved in a drug conspiracy out of Georgia, which had the similar involvement. And that's why he was in jail following the conspiracy. But all of this was interrelated to the broader conspiracy in terms of the drugs. And it wasn't in the record in terms of why he was in jail at the time that he had met Chin. But the. Well, I take it all the conversations with Coleman were while he was incarcerated. That's correct. And law enforcement also corroborated the testimony of Coleman and Gary Williams because law enforcement, the photographs that they found in Chin's phone were with co-conspirators in Sumter, such as Vaughn holding lots of money in hotel rooms, as well as with other co-conspirators at apartments and homes where they had stored and distributed those drugs. And there was the September 21st, 2011 traffic stop, which is particularly important to the the registration papers on top of the two to three grams of cocaine in the car, and then subsequently telling Dix, who was also dressed as a flight attendant in the backseat of the Florida Highway Patrol cruiser, that I had attempted to pass the cocaine to you and that had I known or remembered, I would have thrown it out the window. And then he also called his brother while he was in the backseat, put him on speakerphone and told his brother that the officers had found about two grams of cocaine and he was going to take the 2G charge. And then he also informed his brother, he asked, what should we do with the money, which indicates that he had a broader understanding about the scope of the conspiracy because there was $50,000 located in Dix's luggage as well as $7,000 on his person. And all of that evidence was corroborated by Coleman's testimony because Coleman also testified that Chin told him that he had been pulled over on the way to the airport with the flight attendant and that on the way there, before dropping the flight attendant off, he had forgotten to sell the cocaine that was on his person. So as to the fifth prong, Chin cannot establish that the result of a new trial would probably be different based on all of this, as the district court correctly held substantial and overwhelming evidence. Now as to the third prong, as we argued in our brief, the letters were merely impeaching  There's a couple different ways to interpret the letter. We would disagree with appellant's counsel to interpret the letter that he ever stated that he denied knowing Bless. That's not what the letters state. If Hill's letter is read to say that he's unable to identify Chin as the drug dealing Bless, then that would be consistent with his trial testimony and therefore would be cumulative. However, if the letters are read only to say that he had made a mistake or he was confused and that his prior identification he was retracting or going back on, then that would be a circumstance in which his credibility was at stake and it would be impeachment evidence. So Chin cannot establish the third prong either in this circumstance and I think it's worth noting the district court's interpretations of the letters below because as the district court said, read literally, Hill only states that he did not see Jerome Vaughn with Leslie Chin and that he did not know Leslie Chin. But the court made clear that the letters do not say that Hill did not see Vaughn with someone known as Bless or that he made up the entire story. And therefore his letters are consistent with his trial testimony because at trial he was unable to identify Bless as Chin. Also in terms of this second issue, Hill's testimony was particularly insignificant. The jury could have reached the result that it did regardless of Hill's testimony because Hill was really, as the United States said in its rebuttal argument, a very small part of this case. All that he provided was that Vaughn had introduced him to an individual by the name of Bless and that Bless on two occasions had sold drugs while he was in South Carolina. But that is insignificant when taken into account all of the, as the district court correctly noted, substantial and overwhelming evidence that existed for the United States. Now lastly, because Appellant touched on it in regard to the sentence, the district court imposed a substantively reasonable sentence and the disparity that existed between Vaughn's sentence and Chin's sentence was warranted. Vaughn's criminal history category was a three and he ultimately accepted responsibility for the crimes he committed, whereas Chin had a criminal history category of five, including an armed robbery, and he didn't accept responsibility. And both ultimately received the bottom of the guideline range sentence. Chin received a sentence of 188 months. His guideline range was 188 to 235. And Vaughn received a sentence of 151 months when his guideline range was 151 to 188 months. So for all those reasons, the court imposed a reasonable, a substantively reasonable sentence and it was significantly below the statutory maximum for Count 1, which was life, and for Count 2, which was 20 years. So unless the court has any other questions, for all those reasons, we would request that the court affirm the judgment of the district court. Thank you. Thank you. Mr. O'Brien. It is without question, I believe by either side, that there was evidence in this trial that Mr. Chin was a drug addict. He was high on cocaine at the time of the traffic stop that my colleague referenced during his argument. This is a major reason why we did not dispute the possession of cocaine count contained in the indictment. It was also, Judge, as noted in our brief and contained within the transcripts that Your Honors will have an opportunity to read, there is another co-conspirator, and that is Mr. Chin's brother, half-brother, and that is Andrew Chin. Andrew Chin, this was not brought out during the government's case in chief, but I actually called, in my case in chief, the lead agent, and we walked through jail calls. After going through hours and hours of jail calls, I was able to locate jail calls where Andrew Chin says, don't tell my brother anything about, essentially, the conspiracy. He is always high, and he's not trustworthy. I don't want him to know anything about this. Going back to the two letters at issue, Your Honors will have an opportunity to read them again. I will point out, I believe, the very relevant portions of the letters. I certainly disagree with the government's assessment, but I'm biased, so I'll leave it to the court to make their own determination. But unequivocally, this is what Mr. Hill wrote, in part. I didn't know the guy Chin, Prensley's Bless, mistaked him for a different guy. I don't even know him. In the second letter, he said, I don't know the guy Leslie Chin, aka Bless. This is important, because during the government's direct examination and redirect examination of Mr. Hill, he could not identify Mr. Chin, who was standing 10 feet away from him, sitting 10 feet away from him. He constantly referred to a person by the name of Bless, and that's significant because of the government. But he also didn't, he couldn't identify Mr. Chin as Bless, right? I mean, so where is the inconsistency? Well, Judge, I, and again, I humbly disagree. I think the transcript shows that he constantly refers to a person as Bless. Bless was the aka of Mr. Chin, which was constantly referred to throughout the trial. Yes, I agree. But Mr. Hill was not able to identify Mr. Chin as Bless. So that's correct. So where is the inconsistency? The inconsistency is there is, he referred to this Bless as the person that he dealt with. Although he could not identify Mr. Chin or aka Bless as the person sitting next to me during trial, it's important because in his letters that he wrote before trial, he states, I didn't know the guy Chin in parentheses Bless. It's our, it's our position that he's saying, I don't know who Bless is, I don't know who Chin is. And he refers to that same essentially statement of belief in both of the letters. They were written a couple of weeks apart, but again, prior to the trial of Mr. Leslie Chin. So it's our position that when you read those letters, he's stating, I don't know who Bless is. I never dealt with Bless. And he repeatedly states, I don't know him. I don't know the guy. And it's Chin parentheses Bless. So our view is that he's stating, I don't know who Bless is. That is contradictory to his testimony at trial where he said, I can't tell you that that is Bless, but I dealt with Bless. I bought cocaine from him on two separate occasions. And again, that's important because the jury found Mr. Chin, Leslie Chin, not guilty of the marijuana and crack cocaine part of this count. And that's significant because the only drug that both Mr. Hill and Mr., pardon me, I've lost my train of thought, Mr. Hill and the additional co-conspirator, Mr. Williams, and Mr. Coleman say that Mr. Chin trafficked in was cocaine. So clearly the jury gave weight to the cumulative testimony of two co-conspirators and one jailhouse snitch because they all referred to this cocaine. Clearly they did not believe the government's evidence as to the additional subparts of this count as to the marijuana and the crack cocaine. Therefore, if one of the two co-conspirators said, no, Bless did not sell cocaine to me, I never saw him sell cocaine to anyone, I don't even know who this person is, I think that that would have severely damaged the government's credibility when it comes to their argument that Mr. Chin was guilty of the cocaine part of the first count, which is the possession with intent to distribute. Again, as to the remaining issues, I again submit to the court that the sentence of 188 months was unreasonable based on the mitigating factors that we brought forward that are part of the record and I submit that the motions for the judgment of acquittal should have been granted based on similar arguments that we made within our brief. If the court has any questions for me, I'd be glad to answer them. I think we have your case. Mr. O'Brien, you were court appointed. We appreciate your having taken this aside. Yes, sir. Thank you, sir.